on behalf of Signet Maritime Corporation, I'd like to reserve five minutes for rebuttal, if I may. May it please the Court. This case arises out of a contract between Signet and LLOG in which LLOG chartered tugs from Signet to tow LLOG's rig into the Gulf of Mexico. The contract contained a requirement that LLOG provide Signet a minimum of seven days' notice of a sale date for the tow. The contract did not contain a particular phraseology or form for the notice, and Signet had not previously contracted with LLOG to perform tow services, so there was no course of dealing between the parties regarding the form or language for the notice of the sale date. Pursuant to the contract, Signet was responsible for the inshore portion of the tow, and Crowley Maritime Services was responsible for the offshore portion of the tow. As a result, careful coordination, precise coordination between the parties was required for a successful completion of the tow. While the contract between LLOG and Signet for the inshore tow did not contain a window, the contract between LLOG, between Crowley and LLOG for the offshore portion of the tow did require a drawdown window for the tow where LLOG was to provide Crowley on certain set dates with an ever-narrowing window for the tow. Signet was aware of this requirement. On June 26, 2014, LLOG provided Crowley, not Signet, Crowley with its contractually required notice of a 21-day window, June 28 through August 17 for the tow. This was 30 days ahead of the first day of that elected window, saying in that email, we will narrow the window to 14 days on July 14. On July 14, in an email just to Crowley, LLOG narrowed the sale window to 14 days from August 4 to August 17. Now this was 14 days prior to the first day of the preceding ever-narrowing window. On the very next day, July 15, in an email to the entire tow team, which included not only Crowley but also Signet, LLOG advised of the August 4 to August 17 window. This communicated to Signet notice of a sale date of August 17, the last day of the window, at the latest, and Signet began to ready its vessels for sailing by that date. On July 29, seven days prior to the date of the preceding noticed window, LLOG advised the tow team that it had informed Crowley that the tow would be at the back end of the window, that is, closer to the August 17 date. And then finally on August 6, LLOG delayed the sale date to an entirely new window from August 29 to September 12, and Signet immediately began engaging LLOG in discussions about payment of a contract-based postponement fee for the delay past the last day of that window, just as Crowley did. Signet's appeal raises two issues for review. The first issue is whether Signet gave notice of the August 17 sale date. The second is a fee-shifting issue. As regards the first issue, even if the district court was correct to reject Signet's principal argument that the July 15 email from LLOG was notice of an August 4 sale date, that is, the first day in the window, the district court nevertheless erred in neglecting to address Signet's alternative argument that the last day of the window, August 17, was noticed in the July 15 email as the sale date, at the latest, since that email advised that the tow-out window was from August 4 to August 17, had been narrowed to those dates. In response, LLOG first contends that Signet did not raise this argument in the district court, so it should be precluded from doing so on the basis that it was raised and preserved in the district court. In its pretrial filings, its post-trial filings, and with the evidence that it submitted at trial, Signet clearly placed an issue . . . Yes? Unlike if we had a case like this coming up on summary judgment, you know, we're doing the usual Rule 56 face-off. Here you've got a two-day bench trial. You've got all these emails. You've got all these questions for the sake of the question that you're right, that it was raised, your alternative argument, that is, in the pre-trial, blah, blah, blah, et cetera, but, you know, not front-loaded. My point is, why isn't it plausible the district court rejected or found not meritorious your primary argument as well as the alternative argument if it was preserved? I mean, unlike saying it wasn't raised, district court didn't know, but if you're right that it was raised, it was in the order, it was front-centered, then why on a fully tried record isn't it perceivable the district court rejected it? Well, in terms of the district court's conclusion with respect to the fact that there was no delay damages awarded to Cignet, it, in effect, did reject the argument, but we consider that error because the district court, in its 14-page opinion, nowhere addresses the alternative argument related to the August 17th date as the sale date that was noticed at a minimum, and all of the evidence, we believe, demonstrates that the July 15th email, at a minimum, said that this last day of the window, August 14th was, August 17th, rather, was a sale date. This is consistent with the documentary evidence that was presented, and it was consistent with the theory of the case as presented by Cignet in terms of the coordination of this too. Again, I'm not suggesting what you're arguing doesn't have traction, but by definition, it was your alternative argument. Yes. Presumably, both counsel lead with their strongest argument, and so your strongest argument was put to the court, you know, fully tried. District court says no merit, so as you say, it was preserved in the pretrial, et cetera, you know, deemed not to be a winner, but I guess my question is, you know, my view is always that the appeal is from the judgment, not from the reasons, and so even assuming a case where the district court doesn't opine, you know, in a Tome about, you know, certain factors, et cetera, et cetera, the judgment is what's on appeal, so if there's evidence in the record, it was preserved, et cetera, et cetera, but the evidence otherwise allows affirming the judgment the way it did, you know, is it really reversible error if the most you can say is that the district court didn't have a line in the reasonings to express the rejected? Do you get my question? I do get your question, Your Honor. It's not just that she didn't address it with a line in the opinion. It's that the opinion is totally silent with respect to dealing with this evidence related to August 17th as the last day of the window that is an effective notice of the sale date. All of the evidence was in the record. We believe that, in fact, the communications and the testimonies undisputed on this point, and because it is undisputed, that gives this court the right to de novo review with respect to those undisputed facts in order to assess the district court's assumed legal conclusion of rejecting the argument, because I think Your Honor is correct about that, but it erred in that legal conclusion in rejecting the argument, partially because it was silent and really didn't ever deal with it, and partially because the evidence is August 17th date was an effective notice to Signet to get its tugs ready, and it did get its tugs ready, and in fact, the complexity of the towing project viewed as a whole required that there be careful coordination between Signet and Crowley, so when that July 15th email goes to the entire tow team and not just Crowley, it was a communication to Signet that, look, we're coordinating all parts of this tow through giving you this communication that is an effective communication of a sale date of August 17th at the latest. Maybe August 4th. We're not appealing the district court's conclusion that August 4th might not have been the effective notice, but at least August 17th was in terms of Signet's reasonable response to act in reliance upon that to get its tugs ready for this tow in order to ensure that the careful coordination between Crowley, the offshore tow, and Signet for the inshore tow was accomplished. Was there any communication after that notice that you're relying on? Yes. In a situation like this, people would be talking every day. Yes, there was communication in terms of subsequent communications about the delay of the sale date, so I reviewed some of them, Your Honor. On July the 29th, Log advised the tow team that the sale date would be pushed back to the back end of the window. That's consistent with our theory that August 17th was, at a minimum, the sale date for the period that was noticed with this window that was communicated to the entire tow team. So, yes, Your Honor, I think there were subsequent communications, and there were certainly communications when that tow was delayed to an entirely new time. Signet actually engaged Log in connection with discussions about payment of the postponement fee, which was due under the contract. Before my time is gone, I'd like to jump to the argument regarding the attorney's fees issue, if I might. Obviously, if the court reverses the district court with respect to the postponement fee, we believe that Signet is entitled to attorney's fees under paragraph 29 of the contract because it would be the prevailing party in enforcing its rights. Do we have jurisdiction to determine this issue? Yes, Your Honor, because there's merit. The fees weren't fixed below, were they? The fees were not fixed below, and you would have to remand for fixing the amount of fees were you to award them to Signet. But our alternative argument, Your Honor, is if the postponement fee and the notice issue doesn't go our way, that paragraph 29 is, as a fee-shifting provision in the face of the American rule, should be construed strictly, and because its language requires that fees only be awarded to a prevailing party seeking to enforce rights under the contract, because Log here was only seeking to defend or declare rights in filing a declaratory judgment action, it wasn't seeking to enforce rights that the district court What did the pretrial order say in regard to attorney's fees? Yes, Your Honor, the pretrial order said a couple of things. It contained, it incorporated the stipulation that had been entered between the parties, and the first stipulation was that the contractual terms in this case are contained in the contract. The contract included not only the blanket charter, it included the request for quote, as well as an email. In the blanket charter, paragraph 29 was one of those terms. What did the pretrial order say about, if anything, about attorney's fees? Well, one, it included a reference to the terms of the contract. That's one. And then in later stipulations, it included shorthand references to the fact that the prevailing party to recover attorney's fees, court costs, and defense costs. That is a shorthand reference to the terms of the contract, and was in no way intended by the parties to alter the language of the contract itself. Well, what we look at in the pretrial order is the language that's used in the pretrial order. As you know, there's a lot of case law from civil cases in this circuit that pretty well say that what the parties put in the pretrial order overrides lots of other things that may have happened before that. So there surely was a prevailing party here, or there will be a prevailing party once we rule on the merits. Yes, Your Honor. I understand what you're saying, but there are two parts of what was included in the pretrial order. There's the pretrial order includes a reference to the pretrial order as if they were set up there itself. We understand your argument on that. I think it's a weak argument when it says prevailing party. I don't know why that language was used unless the parties meant it, but I understand your position on that. Thank you, Your Honor. There's no indication in the record, though, that the parties ever intended to alter the terms of the contract. No, you've said that four times now. All right. Thank you, Your Honor. May it please the Court, Kevin Levy with Phelps Dunbar representing the 24th, the appellee in this case. I can't think of any other way to begin this argument other than to say we think it's a weak appeal. The appellant raises an alternative argument of an August 17th trial date, which they never clearly raised in the court below. At trial, they, in fact, argued specifically that this July 15th tow team email was, and this is their words in a pretrial memo, susceptible of only one meaning, an August 4th sale date. So everything at the district court focused on the August 4th sale date. The judge was never asked to rule upon an August 17th sale date, and in fact, because the contract required specific notice of a specific sale date, it would have been totally inconsistent to argue that the sale date was either August 4th or August 17th. Those days are separated by 14 days when, under the contract, we only had to give seven days' notice. And in another effort to overturn and contradict things that happened in the district court, the stipulation that was entered, which followed the same exact wording in the pretrial order, was not simply that paragraph 29 covered the attorney's fees. It was that under paragraph 29, the prevailing party, whoever that may be, is entitled to recover attorney's fees, costs, and defense costs. Turning briefly to the argument on the merits, again, we believe this is an entirely new argument. The case in the lower court hinged upon, and I suppose this appeal hinges upon, the July 15th tow team email, which discussed a window of August 4th through 17th. Cignet was not owed a window. It was owed only seven days' notice. Again, Cignet kept saying that that notice was susceptible of only one meaning. It meant having vessels ready for a tow on August 4th. As I point out in my brief, Cignet's post-trial brief referred to a sale date of August 4th 22 times. I don't see one reference in any of that briefing to an alternative sale date of August 17th. Now, if Cignet had made this argument, its witnesses could have been thoroughly questioned as to how seven days' notice of a specific sale date was either August 4th or August 17th, dates separated by almost two weeks. So by not clearly making the argument in the lower court, we were precluded from asking the witnesses about that inherent contradiction. Again, Cignet's argument centered on specific language in the July 15th tow team email saying that all tow-related activities needed to be ready for August 4th. We also covered in the district court and in our brief why Cignet was not given windows. It's common sense in the industry. Cignet had tugs nearby. Crawley was bringing tugs from far away for a much longer tow. They needed a lot more advance notice. Cignet wanted windows, and in the negotiations we refused to give them windows. Now, that's not to say that we took advantage of them, because they demanded four days' charter hire for a 12-hour tow. And also, at the end of this contract, we did delay one day because of weather. And we lived up to the contract, and we paid that extra day. So we paid $950,000, including one day of delay, for a 12-hour tow. Now, the tow team email specifically said all tow-related activities had to be ready for August 4th. That's what Cignet concentrated on in the district court, because otherwise there was a broad window referred to in the email, and Cignet eventually admitted that there were a lot of tow-related activities other than getting towboats ready. They had to have a tow manual, an emergency plan. There had to be a channel closure, which Cignet had agreed to handle the channel closure, since they are down there and they deal with the Coast Guard all the time. That was the main reason they got this tow team email giving the window of August 4th through 17th, because the Coast Guard wanted anywhere from two to four weeks advance notice. So we had to make sure that the Coast Guard was going to get that advance notice. The district court heard from logs witness Mark Farrow. He clearly explained the July 15th tow team email was simply notice to everyone to get ready. It was not a firm sale date. Two of his answers that were particularly pertinent were, yes, that we may sale, that's right. That means may sale during the window. I'm not nominating Cignet to do anything. I'm saying be prepared. Cignet's experience in the industry, they knew exactly what was meant by that. Now, at trial, Cignet's witness Jason Maiora eventually admitted that there was absolutely no support in the contract for his main argument. He sent an email and a letter, and he also argued at trial that the declaration of a 14-day window created a firm commitment during which log would ultimately be allowed to declare the sale date. We asked him, where on the contract did you get that from? He had no answer for that. He eventually admitted that there was absolutely no support in the contract for that. The district court properly found in its findings of fact, number 22 in particular, that Cignet could not just pick the first day of a broad window as the sale date or the tow out date. That exact same reasoning applies to the August 17th date. That was a window. It was not a sale date. Again, the tow team email just gave general notice of a sale date. The judge found correctly, we believe, that the tow team email, as log contended in some immediate post-event emails, the window referred to in that tow team email was just contractually irrelevant to Cignet. Cignet knew they had asked for windows. Cignet knew they were not entitled to notification windows. They knew they were looking for seven days notice of a sale date. I think very important, the district court noted several internal Cignet emails, which are almost like smoking guns. Lawyers love using that and there aren't that many smoking guns, but these are close to smoking guns. These emails consistently showed that even after Cignet received this tow team email, that Cignet expected to receive notice of a specific sale date. Cignet would talk amongst themselves about the tugs. There were going to be five tugs needed for this. They were talking among themselves saying, we'll nominate the five specific tugs after law nominates the final sale date. These emails specifically show that Cignet was waiting for a specific sale date. They were not acting on this broad notification window, which was given to the entire tow team. The district court noted again clearly that if Cignet expected a final sale date to be nominated after the July 15th email, then Cignet knew that the email was talking about only a broad window of August 4th through 17th. Neither date could be a sale date, even though we continue to contend that the record is completely void of any arguments by Cignet that August 17th was an alternative sale date. With respect to the attorney's fees, the parties to the contract drafted and agreed upon the contract language. They agreed in the pretrial order and in separate stipulation that the prevailing party was entitled to recover attorney's fees and costs. There was a pretty clear stipulation in the pretrial order. The judge looked at those facts and other uncontested facts in the pretrial order and said, you guys agree about all this? This is a little bit unusual because many judges just go in the pretrial order. She said, you guys in full agreement on all these? If you are, I'd like to have a separate stipulation just referring to those facts. So once again, the parties agreed on all those facts and specifically agreed in the stipulation that was separately prepared and filed that the prevailing party, whoever that was, was entitled to recover attorney's fees and costs under paragraph 29. It's been mentioned a few minutes ago, but let me just put both sides on notice. There's some pretty specific case law in our circuit that may indicate that because no amount has been assigned to the attorney's fees that we lack jurisdiction to consider that. That, of course, would not preclude an appeal after, if it were to go back to the district court for assessment of attorney's fees one way or the other, but I just wanted to mention that to you. I'm not at all sure that we have jurisdiction to approve or deny attorney's fees as to which an amount has not been assigned. Yes, Your Honor. That is a point and we did move to tax our attorney's fees and that was taken under submission and never ruled upon by the, well, we filed a motion with the district judge. She referred it to the magistrate. We did everything to make sure that it was taken into consideration. Just like the argument regarding the alternative argument, what we claim is a new alternative argument about the August 17th trial date, if Signet thought paragraph 29 was ambiguous, if they thought that, the trial judge could have taken testimony on the issue if she thought that was necessary. Witnesses could have been questioned on their understanding and intent of the provision, but all that was unnecessary because Signet clearly stipulated that the prevailing party was entitled to recover fees. Obviously, we contend stipulations are judicial admissions, which are conclusively binding and shouldn't be set aside except to prevent manifest injustice. Well, more importantly than that, it's in a pretrial order and we have a good body of case law that says not that a pretrial order would supersede absolutely anything, but that we give a lot of deference to the pretrial order as the final agreement of the parties as to what the case is all about before trial. Yes, Your Honor. Yes, and the stipulations here were word for word, I believe, if not word for word, in the pretrial order. So the judge actually kind of wanted boots and belts and suspenders on that, which was done. Now, Signet now makes this argument that there's a difference between suing to enforce rights or suing to declare rights, and they even somewhat incredibly argue that there's no evidence we followed the declaratory judgment action to try to be kept free of liens or pre-suit attachment or anything like that. Well, of course there's no evidence of that in the record because there was a stipulation that the contract allowed the prevailing party, whoever that was, to recover attorney's fees. I also believe that clearly, and I appreciate the Court's concern over whether it has jurisdiction, but very briefly, we think the language of the provision clearly applies. Log, in this case, commenced legal proceedings. That's part of the language of Paragraph 29. It says that if anyone commences legal proceedings to enforce rights, it says any rights under the agreement. It speaks very broadly of any rights under the agreement. So we filed a declaratory judgment action to determine our rights and our liabilities and ultimately obtained a judgment in our favor, preventing Signet from bringing any collection efforts, bringing any pre-suit collection efforts or lien claims or anything like that. None of the cases Signet cites for the broad distinction that they attempt to make between enforcing or declaring rights are applicable. I've talked about those in my brief, and I won't go over the distinctions there, but we don't believe any of those cases stand for the propositions that Signet argues. And I guess we've kind of argued a bit about the pretrial order and the stipulation, but obviously stipulations and the pretrial order can only be set aside absent extraordinary circumstances. Signet cites some very complicated cases where somewhat ambiguous stipulations were at issue or sometimes the facts would prove to be wrong. I mean, this was a 77-word paragraph that a number of lawyers looked at and all agreed entitled the prevailing party to recover attorney's fees, court costs, and other defense costs. So the stipulation was in fact an agreement regarding the scope and the application of paragraph 29, not simply an agreement that paragraph 29 covered attorney's fees and defense costs. I have a little bit of time left, but I believe I've covered most of my major points, unless there are questions. All right, sir. Any other questions? All right, sir. I think we have your argument. Thank you for your time, sir. All right. We're back to you, Mr. Ashe, if you have any rebuttal. Yes, Your Honor. I'd like to start with respect to the stipulations and work backwards to my primary argument, but I want to emphasize that the stipulations themselves and the pretrial order refers to the contract terms and incorporates the contract terms, which would include the express wording of paragraph 29. There's no reference in the three little short sentences that talk about prevailing party is due attorney's fees, prevailing party is due court costs, prevailing party is due other defense costs that refers to paragraph 29 itself. And so there's no indication that the parties intended to alter the limitation that is imposed as the law between the parties when they entered the contract that was contained in paragraph 29 with respect to the circumstances under which attorney's fees would be awarded. And so I recognize the law with respect to pretrial orders and stipulations, but these stipulations are not specific enough to alter the law between the parties as reflected in paragraph 29 of the contract. We're not arguing that there's any ambiguity or that there should have been any testimony with respect to that. We're arguing that the paragraph 29, the limitations of the circumstances under which attorney's fees are awardable are clear and that it's limited to circumstances in which the parties sought to enforce their rights. We cited the court to the Siskin case from the District Court of Utah, a provision very similar to the one at issue here in which the court said where a party is seeking to confirm or validate rights, a declaratory judgment action, the Connecticut insurance case where you're seeking to validate or confirm rights in a declaratory judgment situation is not the same as seeking to enforce rights. So we believe that the attorney's fees award in this case is wrong and should be reversed. Back with respect to the sale date, the District Court focused on the August 4th, the first window, the first date of the window in rejecting Signet's argument with respect to the effectiveness of the July 15th email to be noticed of that sale date, but did not say that with respect to a window, even if the first day is not considered effective notice, that's not inconsistent or contradictory for Signet as a party to argue that the last day of that window, August 17th, was an effective notice under the July 15th email. That's because at a minimum the sale had to occur by the July 15th email, in connection with the communications that Log had made to Crowley, in connection with the emails that it sent only to Crowley, but then it incorporated Signet and the rest of the Toe Team. This would include Crowley, Signet, Log, and others in order to make sure that there was coordination of the entire Toe Team and it had to give that notice. That July 29th email is very important because that reflects a period seven days before the date of the last noticed window. This seven day period was important because it was a contractually required point in which Log needed to provide Crowley a more defined locus of when the sale would actually occur. The opposing counsel, I believe, mentioned, if I understood him correctly, that there were negotiations and he requested a window but didn't get a window in the contract. Does the record reflect that? Yes, Your Honor. That is correct. We did request a window and we did not get a window. But the fact that we did not get a window and we got a seven day notice requirement in the contract and we chose to communicate the sale date through communicating a window to the entire Toe Team, that that wasn't also effective notice of a sale date. There was no former phraseology of what the notice would look like that was contained in the contract or in a course of dealing between the parties. So when Signet received this email, it was not later than August 17th. My learned opponent also referred to smoking guns with respect to these other communications. These other communications relate to different events in time, the go, no go date for when the sale would actually occur and the Tugs would need to be nominated for that. I do know that my time is up, Your Honor. I thank you for your attention and appreciate your patience. Opposite, will the briefing and argument of the case, it will be submitted. This concludes the orally argued cases for today. They, along with the non-orally argument, will be submitted. We stand in recess until 9 a.m. tomorrow.